# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

LISA WEST, STORMY HOPSON, )
AUBURN & DOUGLAS CLOYES, )
DELL LIVSEY, JULIA & DALE )
WHITE, individually and as Class )
Representatives, )
  )
  )
        Plaintiffs, )
  )
-vs- )   Case No. CIV-16-264-F
  )
CHAPARRAL ENERGY, LLC, )
CHESAPEAKE OPERATING, LLC, )
DEVON ENERGY PRODUCTION )
CO., LP, EASTOK PIPELINE, LLC, )
EQUAL ENERGY U.S., INC., )
FAIRFIELD OIL & GAS CORP., )
NEW DOMINION, LLC, PHOENIX )
OIL & GAS, INC., RANGE )
PRODUCTION COMPANY, LLC, )
SANDRIDGE EXPLORATION & )
PRODUCTION, LLC, TRANSPRO )
ENERGY, LLC, and WHITESTAR )
PETROLEUM, LLC f/d/b/a )
AMERICAN ENERGY )
WOODFORD, LLC, )
  )
        Defendants. )

## <u>ORDER</u>

Before the court are the following motions:

- Devon Energy Production Company, L.P.'s Motion to Dismiss Plaintiffs' Second Amended Complaint (doc. no. 278);

- Defendant White Star Petroleum, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint for Failure to State a Claim (doc. no. 279);

- Defendant Sandridge Exploration and Production, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint (doc. no. 281);

- Defendant Phoenix Oil & Gas, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Petition (doc. no. 282);

- Motion to Dismiss of Defendants Equal Energy U.S., Inc., Fairfield Oil & Gas Corp., and Oklahoma Oil and Gas Management, Inc. (doc. no. 284);

- Defendants Chaparral Energy, LLC's and Range Production Company, LLC's Motion to Dismiss (doc. no. 285);

- Motion to Dismiss Plaintiffs' Second Amended Complaint filed by defendant, New Dominion, LLC (doc. no. 286);

- Defendant Chesapeake Operating, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint (doc. no. 287); and

- Defendant EastOK Pipeline, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint (doc. no. 289).

Upon due consideration of the parties' submissions and relevant law, the court makes its determinations.

<u>Background</u>

Plaintiffs, Lisa West and Stormy Hopson, originally commenced this putative class action in the District Court of Pottawatomie County, Oklahoma. The action was brought against fifteen defendants and a proposed defendant class of companies operating wells injecting wastewater into the Arbuckle formation. The proposed class area included eight counties in Oklahoma. Plaintiffs alleged that defendants' injection of wastewater had induced or triggered earthquakes and would continue to do so, even if injection of wastewater was immediately stopped. Plaintiffs asked for

2

injunctive relief requiring defendants and the defendant class to reimburse them for earthquake insurance premiums – both prospectively and retrospectively.

The action was removed to this court by defendant, Berexco, LLC, alleging the existence of subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  That defendant and two other defendants were subsequently dismissed by plaintiffs.  Plaintiffs filed a motion to remand, but after an evidentiary hearing, it was withdrawn.  With leave of court, plaintiffs filed an amended complaint.  The amended complaint added seven new defendants and expanded the class area to 26 counties in Oklahoma.  In addition to injunctive relief, plaintiffs requested compensatory and declaratory relief.  The amended complaint asserted the same tort claims alleged in the original petition – private nuisance, ultrahazardous activity, negligence and trespass.

Defendants moved to dismiss the amended complaint on various grounds. The court held a hearing with respect to defendants' dismissal motions.  The court granted defendant Sandridge's motion, concluding that plaintiffs failed to set forth any allegations relating to the defendant after the effective date of its bankruptcy discharge.  The court granted dismissal of the claims against the other defendants on the issue of causation.  Specifically, the court found that plaintiffs had not pleaded facts sufficient to plausibly allege causation – that defendants' alleged injection well activities caused any earthquake that caused damage to the named plaintiffs.  The court also dismissed plaintiffs' request for injunctive relief.  However, the court granted plaintiffs leave to amend.

As authorized, plaintiffs filed a second amended complaint. The pleading adds five new plaintiffs, Auburn Cloyes, Douglas Cloyes, Dell Livsey,[1] Julia White and Dale White, dismisses six defendants[2] and expands the class area to 28 counties in Oklahoma. Plaintiffs allege that defendants' injection of wastewater has caused earthquakes occurring in and around central and western Oklahoma. Plaintiffs describe six separate earthquake swarms, Prague,[3] Edmond,[4] Crescent,[5] Fairview/Cherokee,[6] Pawnee[7] and Cushing.[8] Plaintiffs also makes allegations regarding injection well activities of defendant Sandridge as well as defendant Chaparral,[9] which have purportedly occurred post-bankruptcy.[10]

---

[1] The caption of the second amended complaint names plaintiff's as "Del Livsey" but the body of the pleading refers to plaintiff as "Dell Livsey." The court will use the latter reference for this order.

[2] Although the caption of the second amended complaint does not include defendant, Oklahoma Oil & Gas Management, Inc., the body of the pleading includes the company as a defendant.

[3] According to plaintiffs, there were more than 11 earthquakes in the Prague area greater than 3.5 magnitude between November 5 and December 25, 2011. The biggest earthquake was a 5.7 magnitude on November 6, 2011.

[4] Plaintiffs allege that a magnitude 4.5 earthquake struck near Edmond on December 7, 2013 and more than 20 additional earthquakes of at least magnitude 3 occurred in the Edmond area from November 2013 to February 2014.

[5] Plaintiffs allege that a series of earthquakes struck near Crescent including a 4 plus magnitude on November 19, 2015 and a magnitude 4.2 earthquake on March 9, 2016.

[6] Plaintiffs allege that from November 2015 to February 2016, there were four large earthquakes near Fairview and Cherokee. The largest was a magnitude 5.1 on February 13, 2016 and there were 4.7 magnitude earthquakes on November 19 and 30, 2015 and January 7, 2016.

[7] According to plaintiffs, the largest known earthquake in Oklahoma's history occurred near Pawnee on September 3, 2016. It was a 5.8 magnitude earthquake.

[8] Plaintiffs allege that a 5.0 magnitude earthquake occurred near Cushing on November 7, 2016.

[9] Prior to the filing of the amended complaint, Chaparral had commenced Chapter 11 bankruptcy proceedings.

[10] According to the complaint, much of Sandridge's post-bankruptcy injection activity was in the Bryon-Medford area.

The second amended complaint sets forth allegations with respect to each named plaintiff. According to the amended pleading, plaintiff, Lisa West, suffered damage to her home in the Prague 2011 earthquake and made a claim against earthquake insurance that was eventually paid. But insurance did not cover any damage to the outside of her house and Ms. West had to pay a 1% deductible out of pocket. Also, plaintiff West was not reimbursed for any insurance premiums.

Plaintiff, Stormy Hopson similarly suffered damage to her home during the Prague 2011 earthquake. That damage, however, has not been repaired. Worrying what will happen to her home if a big earthquake causes further damage, plaintiff Hopson would like to purchase earthquake insurance, but due to other financial commitments, she has not done so.

Next, the second amended complaint alleges that plaintiff, Dell Livsey, a resident of Stillwater, Oklahoma, has suffered through four earthquakes, the November 6, 2011 Prague earthquake, the September 3, 2016 Pawnee earthquake, an unidentified November 7, 2016 earthquake and the November 13, 2016 Medford earthquake. According to the amended pleading, plaintiff Livsey suffered property damage from the Prague earthquake and the damage increased with each subsequent earthquake. Plaintiff Livsey would like to have earthquake insurance, but she was dissuaded from purchasing it by her insurance agent due to the high deductible.

According to the second amended complaint, plaintiffs, Auburn and Douglas Cloyes, purchased a home in Edmond on May 14, 2015. Thereafter, they suffered property damage from the Fairview/Cherokee swarm of earthquakes. The couple has earthquake insurance and attempted to make a claim for the damage to the home, but no claim was actually filed. The Pawnee earthquake caused additional damage to their home. The Cloyes submitted an insurance claim, but as of the filing of the complaint, the damage had not been repaired.

Lastly, the second amended complaint alleges that plaintiffs, Julia and Dale White, residents of Cushing, suffered property damage to their home from the Cushing earthquake and made a claim on their earthquake insurance. According to the amended pleading, the Whites received a settlement, "but no one has reimbursed Plaintiffs White for the premiums they incurred and which they will continue to incur as a result of the earthquakes induced by Defendants' activities." Second Amended Complaint (doc. no. 272), at ¶ 35.

For relief, plaintiffs request (1) an award of damages to reimburse them for past and future earthquake insurance premiums; (2) an award to compensate them for damages to real and personal property; (3) damages for interference with the use and enjoyment of property, and for annoyance, discomfort and inconvenience to them; (4) damages for diminution of property value; and (5) an award of economic loss for business interruption. Plaintiffs seek to recover this requested relief under four theories of liability: (1) private nuisance (Count I); (2) abnormally dangerous activities (Count II); (3) negligence (Count III); and (4) trespass (Count IV).

In the second amended complaint, plaintiffs seek to certify a plaintiff class of "[a]ll persons owning an interest in real property in the Class Area from 2011 through the time the Class is certified." Second Amended Complaint (doc. no. 272), ¶ 112. As stated, the class area includes 28 counties. Three subclasses are defined by the complaint: (1) "a damage [sub]class comprising Class Members who incurred, within the Class Area, property damage or personal injury associated with earthquakes ('Damage Subclass');" (2) "an insured subclass comprising Class Members who paid earthquake insurance premiums on real property in the Class Area ('Insured Subclass');" and (3) "Class Members who own real property in the Class Area in areas where shaking experienced by residents from at least one earthquake was MM3 ('Nuisance Subclass')." *Id*. at ¶ 115.

Plaintiffs, in their amended pleading, also seek to certify a defendant class comprised of "[a]ll persons operating an underground injection well disposing of wastewater into the Arbuckle formation, or another formation shown to have caused an earthquake, in the Class Area from 2011 through the time the Class is certified." *Id*. at ¶ 129. Plaintiffs allege that there may be as many as 175 injection-well operators in the class area and joining that many operators, plaintiffs assert, would be impractical and inefficient.

In the pending motions, defendants again challenge the sufficiency of plaintiffs' pleading under Rule 12(b)(6), Fed. R. Civ. P.

Standard of Review

At the Rule 12(b)(6) motion-to-dismiss stage, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Thomas v. Kaven, 765 F.3d 1183, 1190 (10th Cir. 2014) (quoting Cressman v. Thompson, 719 F.3d 1139, 1144 (10th Cir. 2013)). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Thomas, 765 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "'The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Thomas, 765 F.3d at 1190-1191 (quoting Iqbal, 556 U.S. at 678.) Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown the plaintiff is entitled to relief. Iqbal, 556 U.S. at 679. However, where the well-pleaded facts nudge a complaint of plaintiff "across the line from conceivable to plausible," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), dismissal is not appropriate.

Causation

All defendants challenge the second amended complaint for failure to sufficiently allege facts to establish that they caused any earthquake which allegedly injured one or more of the named plaintiffs. According to defendants, plaintiffs have not cured the deficiencies in their previous amended complaint.

"Causation is a traditional element of tort liability." Steed v. Bain-Holloway, 356 P.3d 62, 68 (Okla. Civ. App. 2015). It is an element for all the torts alleged by plaintiffs. See, Valley View Angus Ranch, Inc. v. Duke Energy Field Services, Inc., 497 F.3d 1096, 1107 n. 17 (10th Cir. 2007) (nuisance and trespass); Jennings v. Badgett, 230 P.3d 861, 865 (Okla. 2010) (negligence); and Davis v. City of Tulsa, 87 P.3d 1106, 1109 (Okla. Civ. App. 2004) (abnormally dangerous activity). To establish causation, "there must be 'some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.'" Steed, 356 P.3d at 68 (quoting State of Oklahoma ex rel. Oklahoma Department of Public Safety v. Gurich, 238 P.3d 1, 4 (Okla. 2010)).

Upon review and as discussed below, the court agrees that plaintiffs have failed to sufficiently allege facts to establish that Chaparral and Sandridge caused any earthquake post-bankruptcy which injured any named plaintiff. The court likewise agrees that plaintiffs have failed to allege facts to establish that defendant Range caused any earthquake that injured a named plaintiff.

As stated, in the second amended complaint, plaintiffs have described earthquake swarms, including swarms in and around Edmond and Crescent. Plaintiffs allege that injection well activities of defendants Devon, Oklahoma Oil and Gas Management and New Dominion have primarily caused the Edmond earthquakes and that injection well activities of defendants Devon and White Star Petroleum have primarily caused the Crescent earthquakes. However, with respect to these earthquake swarms, the court finds that the second amended complaint fails

to connect any alleged act or omission of the defendants with damage to a named plaintiff.  Therefore, the court finds that plaintiffs have failed to state any plausible claim against Devon and they have failed to state a plausible claim against Oklahoma Oil and Gas Management and New Dominion with respect to the Edmond earthquake swarm and against White Star Petroleum with respect to the Crescent earthquake swarm.

With regard to the remaining earthquake swarms – Prague, Fairview/Cherokee, Pawnee and Cushing – the court concludes that the second amended complaint sufficiently alleges facts to establish a reasonable connection between the injection well activities of defendants in question and damage to named plaintiffs.

*Chaparral*

After the commencement of this action, defendant Chaparral filed for bankruptcy protection under Chapter 11.  Chaparral's reorganization plan was approved by the bankruptcy court and became effective on March 21, 2017.  Although plaintiff West sought to pursue a class claim against the bankruptcy estate, the claim was not allowed by the bankruptcy court.  *See*, doc. no. 325.  Any claim against Chaparral based upon activities prior to March 21, 2017 (which would include any claim based upon the Fairview/Cherokee earthquake swarm) is therefore barred.

In the second amended complaint, plaintiffs make allegations regarding Chaparral's post-bankruptcy conduct.  Plaintiffs allege that from March 21, 2017 until shortly before the filing of the second amended complaint, Chaparral injected more than 3 million barrels of wastewater and operated two wells of interest, Elsie 1 and Wessel 1.  *See*, Second Amended Complaint (doc. no. 272), ¶ 109.  According to the amended pleading, defendant's activities caused two earthquakes having a magnitude greater than 3.  One earthquake occurred on May 13, 2017 and the other occurred on May 16, 2017.  Both were southwest of Cherokee, Oklahoma.  *Id.*

The court, however, concludes that plaintiffs' allegations are not sufficient to state a plausible claim against Chaparral.  Specifically, there are no allegations that any of the named plaintiffs experienced either of the alleged earthquakes or were injured or damaged by either earthquake.  Thus, there is no connection between an act or omission of Chaparral and damage suffered by a named plaintiff.

Plaintiffs, in a supplemental pleading (doc. no. 321), provide additional facts regarding four 3.0 plus magnitude earthquakes which struck near Jacks, Oklahoma from October 31, 2017 to November 2, 2017.  Plaintiffs describe certain actions taken by the Oklahoma Corporation Commission and Chaparral following those earthquakes.  According to plaintiffs, the Jacks swarm was "perceived as a Modified Mercali [sic – should be Mercalli] ("MM") 3 in both Edmond and Guthrie, where the named plaintiffs reside."  *Id*., p. l.   However, there are no assertions in the supplemental pleading that any named plaintiff experienced the Jacks earthquakes.  Moreover, the court agrees with Chaparral that allegations as to the Jacks earthquake swarm are irrelevant to the adjudication of the legal sufficiency of the second amended complaint since those allegations are not part of the amended pleading.  The court, in adjudicating Chaparral's motion, is limited to factual allegations in the complaint.  Rule 12(d), Fed. R. Civ. P.  Further, LCvR 7.1(j) makes clear that plaintiffs' factual statements are not part of the record, unless authorized by the court.  No such authorization has been sought or granted.  While plaintiffs indicate in the supplemental pleading a desire for leave to amend if the court finds the second amended complaint deficient, the court declines to construe the pleading as a motion to amend under Rule 15, Fed. R. Civ. P.  In requesting leave to file a supplemental brief, plaintiffs did not mention that they intended to include a request for leave to amend.  *See*, doc. no. 319.  The court therefore did not authorize plaintiffs to file any request for leave to amend.

In sum, the court concludes that the allegations in the second amended complaint do not state a plausible claim upon which relief may be granted with respect to Chaparral.  Consequently, the court concludes that defendant Chaparral's motion to dismiss should be granted.

*Sandridge*

The amended complaint was previously dismissed as to defendant Sandridge because the pleading failed to make any allegations concerning the company's activities after the effective date of its bankruptcy discharge.  That would have been a tall order, because the effective date was ten days prior to plaintiffs' filing of the amended complaint.  However, the court granted plaintiffs leave to amend their complaint to assert a post-effective date tort.

In the second amended complaint, plaintiffs make allegations as to Sandridge's injection well activities after the bankruptcy discharge.  The court, however, concludes that these allegations are insufficient to establish that Sandridge caused an earthquake which damaged a named plaintiff.

For most defendants, plaintiffs describe six earthquake swarms and set forth allegations which, at least when measured by the Rule 12(b)(6) standard, provide a reasonable connection between defendants' injection well activities and damage to plaintiffs.  Specifically, plaintiffs allege that certain of defendants' wells primarily caused the swarm because the wells were among the upper quartile of injection well disposal volume, within 10 miles of the earthquake or otherwise of special interest. The second amended complaint does not provide any such allegations with respect to defendant Sandridge.  According to plaintiffs' allegations in the second amended complaint, causation of earthquakes is a function of proximity to an earthquake or the volume of wastewater injected in the wells.  However, plaintiffs do not provide any information as to the proximity of any well or wells of Sandridge to the

11

earthquake allegedly experienced by plaintiff Livsey[11] or whether any well or wells were in the upper quartile of injection volume.  Plaintiffs allege that defendant is responsible for 65 wells which produced more than 107 million barrels of wastewater from the date of bankruptcy discharge to the filing of the second amended complaint.  *See*, Second Amended Complaint (doc. no. 272), ¶¶ 27, 106. According to plaintiffs, "much" of the post-petition injection was in an area known as the "Bryon-Medford Area."  Plaintiffs refer to 28 wells of interest but provide no facts of how the total volume of wastewater injection by Sandridge relates to those wells. In their response brief, plaintiffs, citing paragraph 92 of their amended pleading, state that "Sandridge's injection activities place it in the upper quartile of injection well disposal volume, within 10 miles of an earthquake or otherwise special interest." Response (doc. no. 300), p. 6.  However, paragraph 92 refers to two wells, Seebe 1-23 and Seebe 2-23.  *Id.*, ¶ 92.  Neither well is listed as one of the 28 wells of interest.

Plaintiffs also point out that the second amended complaint alleges that several of the earthquakes caused by Sandridge's post-bankruptcy injection activities were almost right under one or more of its larger injection wells.  *See*, Second Amended Complaint (doc. no. 272), ¶ 107.  However, there are no allegations that the alleged earthquake which plaintiff Livsey experienced was one of these earthquakes.

In their briefing, plaintiffs argue that they are not required to establish that a specific well or wells caused a specific earthquake or earthquake swarm.  *See*, Response (doc. no. 298), p. 25.  However, as to the other defendants and Sandridge

---

[11] The court notes that in their response, plaintiffs represent that "Medford" is a scrivener's error and that the relevant earthquake experienced by Livsey was the 3.8 earthquake which occurred on March 16, 2017 and was centered 8 km SW of Cherokee.  *See*, Second Amended Complaint (doc. no. 272), ¶ 107 (Table 2).

(pre-bankruptcy), plaintiffs link specific wells to specific earthquakes to specific plaintiffs.  Those allegations, in the court's view, provide a reasonable connection between the acts or omissions of defendants and the harm to plaintiffs.  The allegations with respect to Sandridge post-bankruptcy do not connect a specific well or wells to a specific earthquake experienced by plaintiff Livsey.  Therefore, the Second Amended Complaint does not show a reasonable connection between the acts or omissions of Sandridge and the harm to plaintiff Livsey.

In the court's view, the allegations set forth in the second amended complaint are not sufficient to nudge plaintiffs' claims against defendant Sandridge from conceivable to plausible.  The allegations are not adequate to show that defendant Sandridge's post-bankruptcy injection well activities caused any earthquake that damaged plaintiff Livsey.  The court therefore concludes that defendant Sandridge's motion to dismiss should be granted.

*Range*

Plaintiffs, in their briefing, state:

> For all Defendants other than Range, Plaintiffs allege that the specific defendant injected through specific well(s) causing a specific earthquake which damaged specific plaintiff(s).  For Range, no specific well was identified, nor was causation of a specific earthquake alleged.

Response (doc. no. 298), p. 6.

The court agrees that no causation has been specifically alleged as to defendant Range.  The court therefore finds that the second amended complaint is insufficient to state a plausible claim upon which relief may be granted against defendant Range.  Although plaintiffs, in a footnote, seek leave to amend if the court "is inclined to dismiss" Range, *id.*, n. 4, the court denies the request.  If plaintiffs desired to again amend their complaint, they should have sought leave to do so by motion so that the affected parties would have an opportunity to respond and the

court would have an opportunity to rule promptly, in the interest of keeping this complex case moving.   The court's local civil rules do not allow a motion to be filed in a response.   *See*, LCvR 7.1(c).  Moreover, the court has already granted plaintiffs an opportunity to cure the lack of causation deficiency in their pleading.   They concededly have not done so with respect to defendant Range.   Hence, the court concludes that defendant Range's motion to dismiss should be granted.

*Edmond and Crescent Earthquake Swarms*

The second amended complaint describes an Edmond earthquake swarm and alleges that the wastewater injection into the Arbuckle formation by defendants Devon, Oklahoma Oil and Gas Management, New Dominion and others, primarily caused the earthquakes.  It also describes a Crescent earthquake swarm and alleges that the wastewater injection into the Arbuckle formation by defendants Devon and White Star Petroleum, and others, primarily caused the earthquakes.  The Edmond earthquakes occurred from November 2013 to February 2014 and the Crescent earthquakes occurred from November 2015 to March 2016.  Mr. and Mrs. Cloyes are the only named plaintiffs alleged to have experienced and been damaged by the Edmond earthquakes.    Second Amended Complaint (doc. no. 272), ¶ 82 ("Specifically, Plaintiffs Cloyes suffered damage to their home as a result of the Edmond earthquakes.")  However, the second amended complaint makes clear that the Cloyes did not own the real property affected by those earthquakes when they occurred.  They purchased their property on May 14, 2015, more than one year after the last referenced earthquake.  *Id.*, ¶ 34.  Furthermore, there are no allegations in the second amended complaint that the Cloyes or any other named plaintiffs experienced the Crescent earthquakes.

In their response, plaintiffs state that the Cloyes and Dell Livsey experienced the Edmond and Crescent earthquakes.  Response (doc. no. 298), pp. 7, 10, 14 ("Devon's wastewater injection primarily caused the Edmond (Dec. 2013) and

Crescent (Nov. '15- Mar. '16) earthquake swarm that damaged Plaintiff Cloyes', Livsey's and the class' real and personal property and interfered with the use and enjoyment of real property."); ("New Dominion wastewater injection primarily caused the Prague (Nov. – Dec. 2011) and Edmond (Dec. 2013) earthquake swarms that damaged Plaintiff West's, Hopson's, Livsey's, Cloyes', and the class' real and personal property and interfered with their use and enjoyment of real property."); ("White Star primarily caused the Prague (Nov.-Dec. '11), Crescent (Nov. '15-Mar. '16), Pawnee (Sep. '16), and Cushing (Nov[.] '16) earthquake swarms that damaged Plaintiff West's, Hopson's, Livsey's, Cloyes', Whites' and the class' real and personal property and interfered with their use and enjoyment of real property.") However, there are no allegations in the Second Amended Complaint that the Cloyes experienced the Crescent earthquakes or that Livsey experienced the Edmond or Crescent earthquakes.  Moreover, the court is limited to the allegations of the second amended complaint, *see*, Rule 12(d), Fed. R. Civ. P, and "[f]actual statements . . . appearing only in briefs shall not be deemed to be a part of the record in the case, unless specifically permitted by the court."  LCvR 7.1(j). [12]

As to the Edmond earthquakes, plaintiffs argue that even though the Cloyes purchased their property after the earthquakes, they are not barred from recovering damages to the property, citing Fischer v. Atlantic Richfield Co., 774 F. Supp. 616 (W.D. Okla. 1989).  They also argue that they can bring a nuisance cause of action since they have a possessory interest or property right in the land, citing Nichols v. Mid-Continent Pipe Line Co., 933 P.2d 272 (Okla. 1996).

---

[12] The court notes that later in their response brief, while discussing defendant Range, plaintiffs acknowledge that the second amended complaint does not tie a named plaintiff to the Crescent earthquakes.  Doc. no. 298, p. 15 ("While there is no named Plaintiff associated for the Crescent Earthquake currently, Plaintiffs Cloyes and Livsey likely suffered damaged from the Crescent earthquake . . .").

The court, however, concludes that neither case supports the claims of the Cloyes against Devon, Oklahoma Oil and Gas or New Dominion.  In the Fischer case, plaintiffs brought a cause of action for pollution of land and water.  The defendant company argued that plaintiffs had no cause of action for pollution damage occurring before they obtained title to the land, citing the principle that a purchaser of land takes the land as he finds it, subject to any pre-existing depreciation due to a nuisance.  The court determined that the cited principle applied only where the injury caused by the nuisance "is permanent, not where it is temporary."  Fischer, 774 F. Supp. at 619.  Additionally, the court found that "[t]he damages complained of by plaintiffs are temporary and continuing in character, in which case a purchaser may recover for injuries suffered subsequent to his purchase."  Id.  The court further found that to the extent defendant's actions created a public nuisance, the "coming to the nuisance" doctrine was inapplicable.  Id.

In the case at bar, there are no allegations that the Edmond earthquakes are continuing in character.  According to the complaint's allegations, Devon's injection activities only caused a discrete series of earthquakes in 2013 and 2014.  Moreover, there are no allegations that plaintiffs suffered any injuries because of any Edmond earthquakes "subsequent" to their purchase.  Plaintiffs seek compensation for the damage that allegedly occurred prior to their purchase.  Lastly, plaintiffs have made no claim for public nuisance.  Therefore, despite plaintiffs' arguments to the contrary, the Fischer case does not support the proposition that the Cloyes may recover for damage which occurred prior to their purchase as a nuisance claim or on any other theory asserted.

In the Nichols case, a sublessee of a ranch brought nuisance and negligence claims for injuries to cattle and for harm to his possessory interest in the ranch. Plaintiff alleged that defendant's oil and gas operations released hydrocarbons which were ingested by his cattle.  The oil and gas operations at issue had occurred prior

16

to the sublease.  The defendant argued that the plaintiff could not recover under the nuisance claim because he was a trespasser on the land.  Although the Oklahoma Supreme Court acknowledged that there might be a legal question about the validity of the sublease, it concluded that defendant could not raise as a defense the lessee's breach of a provision restricting the lessee's right to sublet without the lessor's approval.  The Court found that the record established that plaintiff was in actual possession of the land, and consequently, he fell within the class of claimants authorized to bring an action for private nuisance.  Thus, the Court determined that the plaintiff could recover for personal harm, inconvenience and annoyance incidental to defendant's interference with plaintiff's possessory interest in the land.

Here, the Cloyes are currently in possession of the land.  However, unlike the sublessee in Nichols, the harm for which the Cloyes seek to recover damages was suffered before the Cloyes owned or possessed the property.  There are no allegations as to any Edmond earthquake occurring after the purchase of their residence.  The court concludes that the Nichols decision does not support the Cloyes' claim of nuisance or any other tort claim alleged.

In sum, because plaintiffs have failed to allege facts sufficient to show that any named plaintiff was damaged because of any wastewater injection activities allegedly causing the Edmond and Crescent earthquake swarms, the court finds that plaintiffs have failed to allege plausible claims against Devon and Oklahoma Oil and Gas Management and their motions to dismiss should be granted in their entirety. The court also concludes that plaintiffs have failed to allege plausible claims against defendant New Dominion based upon the Edmond earthquake swarm and against defendant White Star Petroleum based upon the Crescent earthquake swarm. Consequently, the motion to dismiss of defendant New Dominion should be granted as to claims based upon the Edmond earthquake swarm and the motion to dismiss of

White Star Petroleum should be granted as to claims based on the Crescent earthquake swarm.

In the second amended complaint, plaintiffs seek to recover against White Star Petroleum, with respect to the Prague, Pawnee and Cushing earthquake swarms. Plaintiffs seek to recover against New Dominion with respect to the Prague earthquakes. As discussed below, the court concludes that plaintiffs have satisfied their burden of plausibly alleging causation with respect to those earthquake swarms. Therefore, plaintiffs' claims against defendants, White Star Petroleum and New Dominion, as to those earthquake swarms, will not be dismissed.

*Other Earthquake Swarms*

The remaining defendants (including New Dominion and White Star Petroleum) similarly challenge the adequacy of the causation allegations against them. Plaintiffs allege that the defendants' injection of wastewater caused the Prague, Fairview/Cherokee, Pawnee and Cushing earthquake swarms. The court, accepting the well-pleaded allegations as true and viewing them in a light favorable to plaintiffs, is satisfied that plaintiffs have set forth allegations sufficient to avoid Rule 12(b)(6) dismissal. In the court's view, the new allegations are sufficient to cure the prior shortcomings of the dismissed amended complaint. The new allegations identify specific wells of defendants that were the primary causes of specific earthquakes and they set forth the specific reasons why the specific wells were the primary causes of the specific earthquakes – upper quartile injection well disposal volume, within 10 miles of the earthquake or otherwise of special interest.[13]

---

[13] Plaintiffs specifically allege that the Prague earthquake swarm was primarily caused by defendants Phoenix Oil and Gas, New Dominion, White Star Petroleum, Fairfield, Transpro and Equal Energy. The court notes, however, that there are no allegations that these defendants were injecting wastewater prior to the 2011 earthquake or earthquakes. The second amended complaint describes the injection volumes for each of the defendants in paragraphs 21-23, 25 and 29 and

The new allegations also link the specific earthquakes to harm suffered by one or more of the named plaintiffs.  The court concludes that plaintiffs have met their burden to plausibly allege causation.  The court rejects defendants' arguments to the contrary.

In reaching its decision, the court specifically rejects the argument advanced by White Star Petroleum and New Dominion[14] that plaintiffs must identify the specific geographic fault "that would permit increased pressure in the Arbuckle to trigger an earthquake having its point of origin in the granite basement."  Motion (doc. no. 279), p. 4.  The Rule 12(b)(6) standard is more severe than it used to be, of course, but it does not put White Star Petroleum and New Dominion in a position to test plaintiffs' pleadings as severely as they propose to do.  The court does not conclude that identification of any particular fault as the culprit is necessary to avoid Rule 12(b)(6) dismissal.   As plaintiffs point out, they do not have an obligation to prove causation at this stage – they merely need to allege sufficient facts to allege plausible claims.  In the court's view, plaintiffs have done so, despite the fact that they have not identified the specific geographic fault or faults which permit wastewater in the Arbuckle to trigger an earthquake.  Plaintiffs, in advancing their geographic assertions in the second amended complaint, may well have given themselves a steep hill to climb for summary judgment purposes, but they have surmounted the flatter slope presented by Rule 12(b)(6).

---

refers to injection volumes for Pottawatomie County.  The injection volumes alleged are from 2012 to 2014 or 2014 to 2015.  No volumes are given for 2011 or earlier.  But none of the defendants have challenged the second amended complaint on this basis and the court declines to raise the issue *sua sponte*.  The issue may be raised on summary judgment, if appropriate.

[14] In its motion, New Dominion generally adopts and incorporates White Star Petroleum's dismissal motion.  *See*, Motion (doc. no. 286), p. 4.

Insurance Premiums as Damages

In their motions, the remaining defendants also challenge plaintiffs' request for reimbursement of past and future insurance premiums.  Some of the named plaintiffs carry earthquake insurance and others desire that coverage.  Defendants contend that insurance premiums are not recoverable as damages as a matter of law.

*Parties' Arguments*

Defendants initially argue that the cost of insurance premiums does not constitute an item of compensable damages for injury to property.  They posit that Oklahoma law limits damages for permanent injury to "the difference between the actual value immediately before and immediately after the damage is sustained," Keck v. Bruster, 368 P.2d 1003 (syllabus 1), and limits damages for temporary injury to "the reasonable cost of repairing the damage and restoring it to its former condition," *id*.  With respect to latter, defendants also point out that the cost of restoration cannot exceed the diminution in value caused by a defendant.  *See*, Schneberger v. Apache Corp., 890 P.2d 847, 849 (Okla. 1994).

Additionally, several defendants argue that payment of premiums to insure for future property damage caused by an earthquake is a voluntary act, and under Oklahoma law, voluntary payments are not recoverable as damages.

Defendant Chesapeake further points out that Oklahoma law has never recognized an award of insurance premiums as damages in a tort action, and that a Louisiana court which addressed the issue in Nikolaus v. City of Baton Rouge/Parish of East Baton Rouge, 40 So.3d 1244 (La. App. 1ˢᵗ Cir. 2010), determined no such recovery existed.

In response, plaintiffs recognize that Oklahoma law has not specifically addressed whether insurance premiums are recoverable.  However, plaintiffs point out that in nuisance and negligence actions, a plaintiff can recover damages for personal injury as well as damages for injury to property.  Plaintiffs point out that

the Oklahoma Supreme Court has specifically held in several nuisance cases that injuries related to inconvenience, annoyance and discomfort are injuries to the person and are separate and distinct from injury to property.  They also point out that 23 O.S. 2011 § 61, which codifies damages for tort actions, provides that the measure of damages in those actions "is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not." According to plaintiffs, this measure of damages allows an injured party to receive compensation for any pecuniary loss.  This court, plaintiffs argue, can find the payment of insurance premiums to be a "detriment."  Further, plaintiffs assert that even though they suffered property damages from the earthquakes, they are not limited to recovery of those damages alone.  They maintain that they may recover all damages that were proximately caused by the earthquakes, whether anticipated or not.

Plaintiffs additionally contend that defendants are incorrect in arguing that they cannot recover insurance premiums because they are voluntarily paid. According to plaintiffs, the cases cited by defendants in support of their position do not involve the payment of insurance premiums, and more particularly, they do not involve the payment of insurance premiums to a third-party not involved in the lawsuit.  Further, plaintiffs point out that the insurance premium payments were not voluntary.  They assert that they would not have any need for earthquake insurance but for the actions of defendants.

In reply, defendants, White Star Petroleum, Equal Energy, and Fairfield Oil and Gas,[15] argue that in the second amended complaint, plaintiffs did not ask for annoyance, discomfort and convenience damages under the negligence or nuisance

---

[15] Equal Energy and Fairfield Oil and Gas adopt the arguments made by White Star Petroleum in its reply brief.

theories. Instead, they requested such damages only with respect to the trespass theory. And, defendants assert that under Oklahoma law, plaintiffs must show physical injury causally connected to alleged emotional distress to recover for that emotional distress under a trespass claim. Defendants point out that the insured subclass does not allege any physical injury resulting from any alleged trespass.

In addition, defendants assert that the second amended complaint does not allege that plaintiffs were economically forced to purchase earthquake insurance. Defendants contend that even if the court were to infer that plaintiffs incurred insurance costs under coercion, duress or a similar theory of involuntary conduct, Oklahoma courts, following Cimarron Pipeline Construction, Inc. v. United States Fidelity & Guaranty Insurance Company, 848 P.2d 1161 (Okla. 1993), would not recognize forced insurance premiums as a form of damages.

Defendant EastOK argues that plaintiffs have cited no authority holding that insurance premiums are recoverable as damages for personal annoyance and inconvenience. Such damages, defendant maintains, would not be foreseeable and naturally flow from the alleged tortious acts.

Defendant Chesapeake argues that in lumping insurance premiums with other types of damages, plaintiffs have not addressed the fundamental nature of insurance premiums and how payment of those premiums is inconsistent with Oklahoma's concepts of damages. Chesapeake asserts that plaintiffs and class members who elect to obtain earthquake insurance have made a choice as to how to manage risk. Defendant maintains that many will never suffer damage or make a claim on their policy, just as many who chose not to obtain earthquake coverage will never suffer any actual harm.

*Discussion*

As a federal court sitting in diversity, the court's duty "under *Erie v. Tompkins* principles is of course to conform to Oklahoma's substantive law." Stauth v.

National Union Fire Ins. Co. of Pittsburgh, 236 F.3d 1260, 1267 (10th Cir. 2001). And absent definitive direction from the Oklahoma Supreme Court, the court must "predict the course that body would take if confronted with the issue." *Id.* In making such prediction, the court is "free to consider all resources available, including decision of [Oklahoma] courts, other state courts and federal courts, in addition to the general weight and trend of authority." F.D.I.C. v. Schuchmann, 235 F.3d 1217, 1225 (10th Cir. 2000).

Here, all agree that neither the Oklahoma Supreme Court nor any other Oklahoma court has addressed whether a plaintiff, in a tort action, may recover reimbursement for money paid by way of insurance premiums. The court therefore must predict whether such damages are legally cognizable. Upon review of the parties' submissions and relevant authority, the court finds that the Oklahoma Supreme Court, if confronted with the issue, would find the money damages sought by plaintiffs are not legally cognizable.

The court has ruled, in a separate putative class action, Meier, *et al.* v. Chesapeake Operating, L.L.C., *et al.*, CIV-17-703-F, that the named plaintiffs are not entitled to recover insurance premiums paid to obtain earthquake insurance coverage, or the excess amount paid to maintain the coverage, under tort theories of public and private nuisance, ultrahazardous activities and negligence. In that case, the named plaintiffs made no allegations of any damage to their person or their property. They only alleged damage in the form of their payment of past and future insurance premiums. Here, although the insured subclass, as defined, does not assert that the class members have suffered damage to person or property, the insured subclass's claims are not before the court. Indeed, the court has not certified any subclass. Only the named plaintiffs and their claims are before court. McKenzie v. City of Chicago, 118 F.3d 552, 555 (7th Cir. 1997) ("Because a class has not been certified, the only interests at stake are those of the named plaintiffs.") Each of the

named plaintiffs has alleged damage to property, as well as personal damage in the form of annoyance, discomfort and inconvenience.  This case, therefore, is not the same as the <u>Meier</u> case.  Nevertheless, even though the named plaintiffs have alleged damage to their property or to their person, the court opines that plaintiffs are not entitled to recover insurance premiums as an additional item of damages.

Plaintiffs have not cited any case authority which permits the recovery of insurance premiums in a tort action.  As pointed out by defendant Chesapeake, a Louisiana appellate court, in <u>Nikolaus v. City of Baton Rouge/Parish of East Baton Rouge</u>, 40 So.3d 1244 (La. App. 1st Cir. 2010), addressed the issue in a tort action and held that insurance premiums were not recoverable.  In that case, the plaintiff brought a tort action against defendant city for failure to repair and maintain a drainage system resulting in flood damage to her home.  As part of the requested damages, plaintiff sought to recover the cost of flood insurance she purchased.  The trial court awarded the damages.  On appeal, the Louisiana appellate court reversed.  In so doing, the court explained that even though plaintiff would not have had to purchase flood insurance but for her flooding problems, it was unaware of any "law or jurisprudence that allows her to recover these damages."  <i>Id</i>. at 1248.  The appellate court, following another Louisiana appellate court in <u>Severn Place Associates v. American Bldg. Services, Inc.</u>, 930 So.2d 125 (La. App. 5th Cir. 2006), denying a cause of action to recover increased insurance premiums arising from a tortfeasor's negligence, determined that "no right of action exists for recovery of insurance premiums based on a tortfeasor's negligence or strict liability."  <u>Nikolaus</u>, 40 So.3d at 1248.  In the absence of any relevant authority allowing recovery of insurance premiums under the tort theories alleged, the court opines that the Oklahoma Supreme Court would not permit plaintiffs to recover insurance premiums as an item of damages.

Plaintiffs urge the court to allow them to recover insurance premiums as a part of damages for annoyance, discomfort and inconvenience.  The court agrees with defendants, White Star Petroleum, Equal Energy and Fairfield Oil and Gas, that plaintiffs have sought those damages only under the trespass theory they assert.  *See*, Second Amended Complaint, Prayer, pg. 81.   Judge Miles-LaGrange ruled in Bickerstaff v. Halliburton Energy Services, Inc., 2015 WL 3646136, at *3 (W.D. Okla. June 10, 2015) that while plaintiffs could recover damages for personal inconvenience, annoyance and discomfort under a nuisance theory absent physical injury, plaintiffs could not recover compensation for mental distress, anguish, anxiety, discomfort and annoyance under a trespass claim without physical injury.  In this case, none of the named plaintiffs, except Julia White,[16] has claimed to have suffered any physical injury.

The court need not decide whether plaintiffs are entitled to recover damages for annoyance, discomfort or inconvenience under a trespass theory absent physical injury.  Even if the court were to find that all named plaintiffs could recover these damages without physical injury, the court cannot conclude that the Oklahoma Supreme Court would recognize the payment of insurance premiums as falling within the scope of the relief available on account of annoyance, discomfort and inconvenience.  And none of the cases cited by plaintiffs support a conclusion that insurance premiums would fall within any of those categories.

Plaintiffs also cite 23 O.S. 2011 § 61 as support for an award of damages for insurance premiums.  While the language of the statute is broad, *i.e.* the measure of damages includes "all detriment," Oklahoma courts have determined that the statutory provision declares or codifies common law.  Commercial Fin. Servs., Inc.

---

[16] According to the second amended complaint, Mrs. White suffered a physical injury to her foot when a sliver of glass from broken glassware entered her foot, causing an infection.  See, Second Amended Complaint (doc. no. 272), ¶ 35.

v. J.P. Morgan Secs, Inc., 152 P.3d 897, 900 (Okla. Civ. App. 2006).  Recovery of insurance premiums has not been recognized under Oklahoma common law.  Consequently, the court concludes that the statutory provision does not support a finding that plaintiffs can recover insurance premiums under their alleged tort theories of liability.

In their papers, plaintiffs additionally refer to Article 2, Section 6 of the Oklahoma Constitution which states:

> The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

Okla. Const. Art. 2, § 6.  Plaintiffs assert that in reviewing defendants' motion, the court must recognize that this constitutional provision guarantees a remedy for every wrong and for injury to person, property, or reputation.  However, in interpreting Article 2, Section 6, the Oklahoma Supreme Court has held that the constitutional provision is intended "to guarantee that the judiciary would be open and available for the resolution of disputes, but not to guarantee that any particular set of events would result in court-awarded relief."  City of Anadarko v. Fraternal Order of Police, Lodge 118, 934 P.2d 328, 330 (Okla. 1997).  According to the Court, it is "most often used to insure equal access to court, regardless of status."  Id.  The court cannot conclude that Section 6 guarantees plaintiffs a specific remedy, such as recovery of insurance premiums.  Furthermore, the court notes that plaintiffs, in the case at bar, are not without any remedy for defendants' alleged wrongs.  They also seek recovery for damage to their property and to their person.  Thus, the court concludes that Section 6 does not support a finding that plaintiffs are entitled to a remedy by way of damages measured by the cost of insurance.

Plaintiffs suggest, in briefing, that the payment of insurance premiums is not voluntary.  *See*, Response (doc. no. 298), p. 38 ("[I]t seems a bit disingenuous to categorize Plaintiffs' payments for these insurance premiums as 'voluntary'. . . Being forced to pay for something that would not be necessary if it were not for the wrongful act of another is far from voluntary.").[17]  To the extent plaintiffs seek to recover their insurance premiums based upon a theory of economic duress, the court finds that they are not entitled to that relief.  The Oklahoma Supreme Court has previously held that economic duress is not an independent tort under Oklahoma law.  *See*, Cimarron Pipeline Const., Inc., 848 P.2d at 1162.  Therefore, plaintiffs may not recover insurance premiums on a theory of economic duress.

Plaintiffs further argue that "[d]ismissing [the insurance premiums] damages without any benefit of discovery would be improper."  Response (doc. no. 298), p. 39.  However, given that plaintiffs have not proffered any persuasive authority for the court to conclude that the Oklahoma Supreme Court would recognize the damage request under the tort theories of liability alleged, the court concludes that it is not in the interest of justice to allow plaintiffs to further pursue the request and conduct discovery as to these damages.  Hence, the court concludes that the remaining

---

[17] As stated, defendants, White Star Petroleum, Equal Energy and Fairfield Oil and Gas, argue that plaintiffs cannot recover insurance premiums as damages because they are voluntarily paid.  The facts of this case are, however, clearly distinguishable from the cases cited by defendants applying the voluntary payment rule.  *See*, Hadley v. Farmers' Nat. Bank of Oklahoma City, 257 P. 1101, 1103-1104 (Okla. 1927) ("Money voluntarily paid under a claim of right to payment, with full knowledge of all of the facts which would entitle the payor to relief against the payment of the claim, cannot be recovered on the ground that the claim was illegal."); *accord*, Am. Surety Co. v. Steen, 208 P. 212, 213 (Okla. 1922); *see also*, McWethy v. Telecommunications, Inc., 988 P.2d 356, 357 (Okla. Civ. App. 1999) ("[P]ayment, with full knowledge of all facts, cannot be recovered because of payer's misapprehension of legal rights and obligations.")  The court therefore rejects defendants' argument that plaintiffs cannot recover insurance premiums based upon the application of the voluntary payment rule.

defendants' motions to dismiss should be granted as to plaintiffs' request for reimbursement of insurance premiums.[18]

Conclusion

Based upon the foregoing, Devon Energy Production Company, L.P.'s Motion to Dismiss Plaintiffs' Second Amended Complaint (doc. no. 278) is **GRANTED**; Defendant, Sandridge Exploration and Production, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint (doc. no. 281) is **GRANTED**; the Motion to Dismiss of Defendant Oklahoma Oil and Gas Management, Inc. (doc. no. 284) is **GRANTED**; Defendants Chaparral Energy, LLC's and Range Production Company, LLC's Motion to Dismiss (doc. no. 285) is **GRANTED**.

Plaintiffs' Second Amended Complaint against defendants, Devon Energy Production Company, L.P., Oklahoma Oil and Gas Management, Inc., Chaparral Energy, LLC, and Range Production Company, LLC, is dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

The Motion to Dismiss Plaintiffs' Second Amended Complaint filed by defendant, New Dominion, LLC (doc. no. 286) is **GRANTED** as to plaintiffs' claims based upon the Edmond earthquake swarm and plaintiffs' request for reimbursement of insurance premiums, and **DENIED** in all other respects.

---

[18] Plaintiffs request reimbursement of insurance premiums on behalf of themselves as well as on behalf of other similarly situated. In the second amended complaint, plaintiffs propose an insured subclass ("Insured Subclass") comprising of class members who paid earthquake insurance premiums on real property in the class area. The court has not yet addressed whether certification of a class or subclass would be appropriate. Nonetheless, the court may rule on motions under Rule 12, such as the ones before it, before addressing certification of a class or subclass. *See*, Manual for Complex Litigation (Fourth) § 21.133. The court's ruling granting defendants' motions to dismiss as to plaintiffs' request for reimbursement of insurance premiums is binding only on the named parties. However, in light of the court's decision on that issue, the court concludes that the allegations relating to the Insured Subclass, and the requested relief for the Insured Subclass, should be stricken from the second amended complaint under Rule 12(f), Fed. R. Civ. P., as those allegations and the requested relief are immaterial to this action going forward.

Defendant White Star Petroleum, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint for Failure to State a Claim (doc. no. 279) is **GRANTED** as to plaintiffs' claims based upon the Crescent earthquake swarm and plaintiffs' request for reimbursement of insurance premiums, and **DENIED** in all other respects.

The motions to dismiss of the remaining defendants (doc. nos. 282, 284, 287 and 289) are **GRANTED** as to plaintiffs' request for reimbursement of insurance premiums and are **DENIED** in all other respects.

In light of the court's ruling granting defendants' motions to dismiss with respect to plaintiffs' request for reimbursement of insurance premiums, the allegations and the requested relief set forth in the Second Amended Complaint relating to the Insured Subclass are **STRICKEN** as immaterial pursuant to Rule 12(f), Fed. R. Civ. P.

IT IS SO ORDERED this 13th day of August, 2018.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

16-0264p058.docx

29